# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "Agreement") is entered into as of November 19, 2013, by and between (i) the National Credit Union Administration ("NCUA") Board, as Liquidating Agent of U.S. Central Federal Credit Union ("U.S Central"), Western Corporate Federal Credit Union ("Western"), Southwest Corporate Federal Credit Union ("Southwest"), Members United Corporate Federal Credit Union ("Members") and Constitution Corporate Federal Credit Union ("Constitution") (collectively, the "Credit Unions", and the NCUA Board as liquidating agent for each Credit Union and the Credit Unions collectively, the "Liquidating Agent(s)"), on the one hand, and (ii) J.P. Morgan Securities, LLC, J.P. Morgan Acceptance Corporation I,  Bond Securitization, LLC, Bear Stearns & Co., Inc. n/k/a J.P. Morgan Securities, LLC, Structured Asset Mortgage Investments II, Inc., Bear Stearns Asset Backed Securities I, LLC, J.P. Morgan Chase Bank, N.A. (as purported Successor-in-Interest to Washington Mutual Bank, WaMu Capital Corp., Long Beach Securities Corp., and WaMu Asset Acceptance Corp.), WaMu Capital Corp., Long Beach Securities Corp., and WaMu Acceptance Corp.  (collectively, the "JPM Defendants") on the other.  The JPM Defendants, together with the Liquidating Agents, are referred to herein as the "Settling Parties," with each a "Settling Party."[1]

WHEREAS, on or about June 20, 2011, the Liquidating Agents for U.S. Central, Western, Southwest and Members commenced an action against J.P. Morgan Securities, LLC, J.P. Morgan Acceptance Corporation I and Bond Securitization, LLC and other defendants in the United States District Court for the District of Kansas, captioned *National Credit Union Administration Board v. J.P. Morgan Securities, LLC., et al.*, No. 11-02341 (the "*JPM Kansas* Action");

WHEREAS, on or about December 14, 2012, the Liquidating Agents for U.S. Central, Western, Southwest and Members commenced an action against Bear Stearns & Co., Inc. n/k/a J.P. Morgan Securities, LLC, Structured Asset Mortgage Investments II, Inc., Bear Stearns Asset Backed Securities I, LLC and other defendants in the United States District Court for the District of Kansas, captioned *National Credit Union Administration Board v. Bear Stearns & Co., Inc. n/k/a J.P. Morgan Securities, LLC, et al*., No. 12-02781 (the "*Bear Stearns Kansas* Action");

WHEREAS, on or about January 4, 2013, the Liquidating Agents for U.S. Central, Western and Southwest commenced an action against J.P. Morgan Chase Bank, N.A. (as Successor-in-Interest to Washington Mutual Bank, WaMu Capital Corp., Long Beach Securities Corp., and WaMu Asset Acceptance Corp.), WaMu Capital Corp., Long Beach Securities Corp and WaMu Acceptance Corp. in the United States District Court for the District of Kansas, captioned *National Credit Union Administration Board v. J.P. Morgan Chase Bank N.A. (as Successor-in-Interest to Washington Mutual Bank, WaMu Capital Corp., Long Beach Securities Corp., and WaMu Asset Acceptance Corp.) et al.* No. 13-2012 (the "*WaMu Kansas* Action");

---

[1]   All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in Paragraph 1 herein.

WHEREAS, on or about September 17, 2013, the Liquidating Agents served an Amended Complaint in the *JPM Kansas* Action;

WHEREAS, on or about September 23, 2013, the Liquidating Agents for Southwest and Members commence an action against Bear Stearns & Co., Inc., n/k/a J.P. Morgan Securities, LLC, J.P. Morgan Securities LLC, and J.P. Morgan Acceptance Corp. I in the United States District Court for the Southern District of New York, captioned *National Credit Union Administration Board v. Bear Stearns & Co., Inc., n/k/a J.P. Morgan Securities, LLC, et al,*. No. 13-06707 (the *Bear Stearns New York* Action);

WHEREAS, the JPM Defendants have determined that they are prepared to enter into a global resolution with various governmental parties, and one independent component of that settlement is to provide compensation to resolve the claims asserted against the JPM Defendants in the *JPM Kansas, Bear Stearns Kansas, WaMu Kansas* and *Bear Stearns New York* Actions, relating to the Securities identified at issue in the Actions and identified on Exhibit A, as well as all other non-agency residential mortgage-backed securities purchased by the Credit Unions that were issued, sponsored, and/or underwritten by any of the JPM Defendants or their affiliates, or that are or were backed by loans originated by or on behalf of the JPM Defendants or their affiliates, including, but not limited to, those that are identified on Exhibit B, and the Liquidating Agents have determined they are prepared to accept amounts paid under this Agreement as compensation in exchange for such settlement, releases, and limitations;

WHEREAS, the Settling Parties have now reached an agreement to fully and finally compromise, resolve, dismiss, discharge and settle each and every one of the Released Claims against each and every one of the Released Persons, and to dismiss the Actions against the JPM Defendants with prejudice and on the merits;

NOW, THEREFORE, for good and valid consideration, the receipt and sufficiency of which is hereby acknowledged by all Settling Parties hereto, the Settling Parties agree as follows:

1.    Definitions.    As used in this Agreement, the following terms shall have the following meanings:

(a)    "Actions" means the *JPM Kansas, Bear Stearns Kansas, WaMu Kansas* and *Bear Stearns New York* Actions.

(b)    "Indirect Contract Claims" means any claim asserted by a party against the Released Defendant Persons under a contract governing the sale, transfer, or servicing of mortgage loans or pools of mortgage loans (including, without limitation, and for the avoidance of doubt, repurchase claims, put-back claims, and any other claim under any Pooling and Servicing Agreement, Assignment and Recognition Agreement, Mortgage Loan Purchase Agreement, or other substantially similar agreement), where neither the Liquidating Agents nor the Credit Unions are signatories, relating to any breach or violation of any representation or warranty as to loans originated, purchased, acquired, transferred, securitized, or collateralizing the Securities or any other securities, and which could result in an economic benefit to any of the Releasing Plaintiff Persons at the expense of any Released Defendant Person.  For the avoidance

of doubt, this definition encompasses, but is not limited to, the Releasing Plaintiff Persons' right to receive any compensation or other benefits to which they are entitled pursuant to the $4.5 billion J.P. Morgan repurchase settlement that was publicly announced on or about November 15, 2013.

(c)     "Securities" means all non-agency residential mortgage-backed securities purchased by the Credit Unions that were issued, sponsored, and/or underwritten by any of the JPM Defendants or their affiliates, including but not limited to the securities that are listed in Exhibit A and B, which lists the Liquidating Agents believe include all such securities. "Securities" also means all non-agency residential mortgage-backed securities that are or were backed by loans originated by or on behalf of the JPM Defendants or their affiliates whether or not such securities are listed in Exhibit A and B.

(d)     "Effective Date" means the date upon which the Settlement Payment is made to and received by the U.S. Department of Justice, as evidenced by confirmation of the wire transfer pursuant to the instructions set forth in the separate settlement agreement dated November 19, 2013 between the U.S. Department of Justice and JPMorgan Chase & Co.

(e)     "LIBOR Claims" means any claims relating to the London Interbank Offered Rate ("LIBOR") that are associated with the Securities or any other securities.

(f)     "Person" means an individual, corporate entity, partnership, association, joint stock company, limited liability company, estate, trust, government entity (or any political subdivision or agency thereof) and any other type of business or legal entity; provided, however, that nothing in this definition or its use in this Agreement shall be construed to bind any governmental agency/entity other than the Liquidating Agents.  The Liquidating Agents warrant, however, that the Liquidating Agents are vested with the sole and complete authority fully and finally to compromise, resolve, dismiss, discharge, and settle each and every one of the Released Claims on behalf of the Credit Unions.

(g)     "Released Claims" means, collectively, the Released Plaintiff Claims and the Released Defendant Claims.

(h)     "Released Plaintiff Claims" means any and all claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, interests, debts, expenses, charges, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature and description whatsoever, (i) whether disclosed or undisclosed, known or unknown, accrued or unaccrued, matured or not matured, perfected or not perfected, choate or inchoate, liquidated or not liquidated, fixed or contingent, ripened or unripened; (ii) whether at law or equity, whether based on or arising under state, local, foreign, federal, statutory, regulatory, common or other law or rule and upon any legal theory (including, but not limited to, claims arising under the federal securities laws), no matter how asserted; (iii) that previously existed, currently exist, or exist as of the Effective Date; (iv) that were, could have been, or may be asserted by any or all of the Releasing Plaintiff Persons against any or all of the Released Defendant Persons in the Actions, in any federal or state court, or in any other court, tribunal, arbitration, proceeding, administrative agency or other forum in the United States or elsewhere; and (v) that relate to the

Securities or that arise out of or are based upon or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Actions; provided, however, that the Released Plaintiff Claims shall not include (i) any claims against any Person other than the Released Defendant Persons; (ii) any Indirect Contract Claims; (iii) any LIBOR Claims, or (iv) any claims to enforce this Agreement.

(i)     "Released Defendant Claims" means any and all claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, interests, debts, expenses, charges, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature and description whatsoever, (i) whether disclosed or undisclosed, known or unknown, accrued or unaccrued, matured or not matured, perfected or not perfected, choate or inchoate, liquidated or not liquidated, fixed or contingent, ripened or unripened; (ii) whether at law or equity, whether based on or arising under state, local, foreign, federal, statutory, regulatory, common or other law or rule and upon any legal theory (including, but not limited to, claims arising under the federal securities laws), no matter how asserted; (iii) that previously existed, currently exist, or exist as of the Effective Date; (iv) that were, could have been, or may be asserted by any or all of the Releasing Defendant Persons against any or all of the Released Plaintiff Persons in the Actions, in any federal or state court, or in any other court, tribunal, arbitration, proceeding, administrative agency or other forum in the United States or elsewhere; and (v) that relate to the Securities or that arise out of or are based upon or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Actions; provided, however, that the Released Defendant Claims shall not include (i) any Indirect Contract Claims; (ii) any LIBOR Claims; or, (iii) any claims to enforce this Agreement.

(j)     "Released Persons" means collectively the Released Plaintiff Persons and the Released Defendant Persons.

(k)     "Released Plaintiff Persons" means each of: (i) the Liquidating Agents; and (ii) the Credit Unions, along with each such Person's respective past and/or present principals, affiliates, subsidiaries, parents, general partners, limited partners and any Person in which they have or had a controlling interest, and each such Person's past and/or present administrators, predecessors, successors, assigns, members, parents, subsidiaries, employees, principals, officers, managers, directors, partners, limited partners, investment bankers, representatives, estates, divisions, financial advisors, assigns, insurers and reinsurers.

(l)     "Released Defendant Persons" means each of the JPM Defendants, along with each of the JPM Defendants' respective past and/or present affiliates, subsidiaries, parents, general partners, limited partners and any Person in which any JPM Defendant has or had a controlling interest, and each such Person's past and/or present principals, administrators, predecessors, successors, assigns, members, parents, subsidiaries, employees, officers, managers, directors, partners, limited partners, investment bankers, representatives, estates, divisions, financial advisors, estate managers, assigns, insurers and reinsurers.

(m)     "Releasing Persons" means, collectively, the Releasing Plaintiff Persons and the Releasing Defendant Persons.

(n)     "Releasing Plaintiff Persons" means (i) the Liquidating Agents; (ii) the Credit Unions; and (iii) each and all of the Liquidating Agents' and the Credit Unions' respective successors in interest, predecessors, representatives, trustees, executors, administrators, agents, heirs, estates, assigns or transferees, immediate and remote, and any other Person who has the right, ability, standing or capacity to assert, prosecute or maintain on their behalf any of the Released Plaintiff Claims, whether in whole or in part; provided, however, that nothing in this definition or its use in this Agreement shall be construed to bind or constitute a release by any governmental agency/entity other than the Liquidating Agents.  The Liquidating Agents warrant, however, that the Liquidating Agents are vested with the sole and complete authority fully and finally to compromise, resolve, dismiss, discharge and settle each and every one of the Released Claims on behalf of the Credit Unions.  The Liquidating Agents further warrant that the Credit Unions constitute all the credit unions for which the NCUA Board currently serves as liquidating agent that purchased residential mortgage-backed securities issued, sponsored, and/or underwritten by any of the JPM Defendants or their affiliates.  "Releasing Plaintiff Persons" shall not include any of the Liquidating Agents' outside counsel.

(o)     "Releasing Defendant Persons" means each of the JPM Defendants and each and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, agents, heirs, estates, assigns or transferees, immediate and remote, and any other Person who has the right, ability, standing or capacity to assert, prosecute or maintain on their behalf any of the Released Defendant Claims, whether in whole or in part; provided, however, that "Releasing Defendant Persons" shall not include any of the JPM Defendants' outside counsel.

2.      In consideration and as compensation for the Liquidating Agents' execution of this Agreement and the release of claims as set forth below, the JPM Defendants shall make or cause to be made, for the benefit of the Liquidating Agents, compensatory payment in the amount of $1,417,525,773.20 (the "Settlement Payment"), payable in accordance with the U.S. Department of Justice's instructions as set forth in the separate settlement agreement dated November 19, 2013 between the U.S. Department of Justice and JP Morgan Chase & Co. Payment of the Settlement Payment by the JPM Defendants to the U.S. Department of Justice for the benefit of the Liquidating Agents shall constitute a full and valid discharge of the JPM Defendants' payment obligation pursuant to this Agreement and in connection with the settlement of the Actions.  This Agreement shall not become effective before the Effective Date.

3.      No Admission of Liability.  This Agreement does not constitute an admission by any of the JPM Defendants of any liability or wrongdoing whatsoever, including, but not limited to, any liability or wrongdoing with respect to any of the allegations that were or could have been raised in the Actions.  To the contrary, the JPM Defendants vigorously deny the allegations in the Actions, and believe them to be wholly without merit.  This Agreement also does not constitute an admission by the Liquidating Agents that they would not have been able to successfully prosecute their claims, and in fact the Liquidating Agents firmly believe in the merit of each of the allegations in the Complaints in the Actions.  The Settling Parties agree that this Agreement is the result of a compromise within the provisions of the Federal Rules of Evidence, and any similar statutes or rules, and shall not be used or admitted in any proceeding for any purpose including, but not limited to, as evidence of liability or wrongdoing by any JPM Defendant, nor shall it be used for impeachment purposes, to refresh recollection, or any other

evidentiary purpose; <u>provided</u>, however, that this paragraph shall not apply to any claims to enforce this Agreement.

4.    <u>Additional Conditions</u>:

(a)    No later than three (3) business days after the Effective Date, the Settling Parties shall jointly file a stipulation of voluntary dismissal with prejudice of the Released Claims in the Actions pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), in the forms attached hereto as Exhibit C1, C2, C3 and C4.  For the avoidance of doubt, the stipulations of voluntary dismissal are not intended to dismiss any claims by any Liquidating Agent against any person or entity other than the Released Defendant Persons with respect to any of the Securities.

(b)    The JPM Defendants agree to not file or join in any further law, administrative, regulatory, or other governmental proceedings regarding the Released Claims; and agree not to join in, facilitate, fund, or assist in any manner, or to make any filings or submissions in support of any pending litigation and/or appeals in cases concerning residential mortgage-backed securities in which any Liquidating Agent is Plaintiff; provided, however, that nothing herein shall prevent the JPM Defendants from complying with requests from any other party pursuant to Rule 45 of the Federal Rules of Civil Procedure or responding to requests that are administrative or ministerial in nature for information.  Nothing in this paragraph will be construed to prevent any trade association of which any JPM Defendant is a member from taking any position with respect to the matters referenced herein, except that no JPMorgan Defendant shall directly or indirectly advocate for or participate in or directly contribute monetarily to the taking of a position on any such matter by any such trade association.

5.    <u>Release by the Plaintiff Releasing Persons</u>.    In exchange for the Settlement Payment and the release provided by the Releasing Defendant Persons, each and every one of the Releasing Plaintiff Persons shall, upon the Effective Date: (a) have and be deemed by operation of law to have completely, fully, finally and forever dismissed, released, relinquished and discharged with prejudice each and every one of the Released Defendant Persons from any and all of the Released Plaintiff Claims; (b) forever be barred and enjoined from filing, commencing, intervening in, instituting, maintaining, prosecuting, or seeking relief (including, but not limited to, filing an application or motion for preliminary or permanent injunctive relief) in any other lawsuit, arbitration or other proceeding in any jurisdiction that asserts any of the Released Plaintiff Claims against any or all of the Released Defendant Persons; and (c) have and be deemed to have covenanted not to sue any of the Released Defendant Persons with respect to any of the Released Plaintiff Claims.

6.    <u>Covenants by the Liquidating Agents</u>.    Effective upon execution of this Agreement, the Liquidating Agents, subject explicitly to their statutory obligations, on behalf of themselves and all of the Releasing Plaintiff Persons, hereby covenant and agree that:

(a)    No Releasing Plaintiff Person shall commence, assert, file or initiate any Released Plaintiff Claim, including (but not limited to) by way of third-party claim, cross-claim or counterclaim or by right of representation or subrogation, against any of the Released Defendant Persons.

(b)     No Releasing Plaintiff Person shall participate in bringing or pursuing any Released Plaintiff Claim against any Released Defendant Person; provided, however, a Releasing Plaintiff Person shall not be precluded from assisting other government agencies in investigating or pursuing any claims against any Released Defendant Person.

(c)     Nothing in this Agreement shall prevent the Liquidating Agents from seeking third-party discovery from any Released Defendant Person in any action or proceeding. For the avoidance of doubt, nothing in this Agreement shall relieve any Released Defendant Person from any obligation or requirement under Rule 45 of the Federal Rules of Civil Procedure.

(d)     Each of the agreements, covenants and other representations made by the Liquidating Agents in this Agreement (including, without limitation, and for the avoidance of doubt, the obligation to voluntarily dismiss the Actions with prejudice pursuant to Paragraph 4(a) and the releases provided pursuant to Paragraph 5) is made pursuant to their statutory obligations and is not in any way inconsistent with those statutory obligations.

7.     <u>Release by the Releasing Defendant Persons</u>.   In exchange for the release provided by the Releasing Plaintiff Persons and the dismissal with prejudice of the Actions referenced above, each and every one of the Releasing Defendant Persons shall, upon the Effective Date: (a) have and be deemed by operation of law to completely, fully, finally and forever to have dismissed, relinquished, released, and discharged with prejudice each and every one of the Released Plaintiff Persons from any and all of the Released Defendant Claims; (b) forever be barred and enjoined from filing, commencing, intervening in, participating in, instituting, maintaining, prosecuting, or seeking relief (including, but not limited to, filing an application or motion for preliminary or permanent injunctive relief) in any other lawsuit, arbitration or other proceeding in any jurisdiction that asserts any of the Released Defendant Claims against any or all of the Released Plaintiff Persons; and (c) have and be deemed to have covenanted not to sue any of the Released Plaintiff Persons with respect to any of the Released Defendant Claims.

8.     <u>Judgment Reduction and Release of Claims</u>.

(a)     In the event any Liquidating Agent obtains a judgment against any other party or parties relating to the Securities identified in Exhibit A or Exhibit B (a "Third Party Judgment"), and such other party or parties, in turn, successfully assert(s) a claim against any of the Released Defendant Persons relating to the Securities on the basis of contribution, indemnity or any other similar legal theory or claim (a "Claim Over"), the Liquidating Agents agree they will reduce the judgment or award they obtain or have obtained against the party asserting the Claim Over in a percentage calculated using the pro tanto rule, the proportionate rule or the pro rata rule, or such other rules as may apply in the relevant jurisdiction, whichever percentage is sufficient to cover fully or otherwise hold the Released Defendant Persons harmless in all respects from the other party's or parties' Claim Over against the Released Defendant Persons. The Liquidating Agents agree, with respect to a proceeding in which one or more of the Liquidating Agents is a party, that they shall consent to and join in, and with respect to all other proceedings consent to, any motion by the Released Defendant Persons seeking a determination

that this Agreement constitutes a release or settlement in good faith of any Claim Over in any such litigation.

(b)     The Liquidating Agents further agree that, to the extent any of them settle, on or after the date of this Agreement, any claims they may have against any other party relating to the Securities and on which the Liquidating Agents provide a release to such other parties (a "Third Party Settlement"), the Liquidating Agents will use their good faith and best efforts to include in the Third Party Settlement a release from such other party in favor of the Released Defendant Persons (in a form equivalent to the releases contained herein) of any claims relating to the Securities on the basis of contribution, indemnity or any similar legal theory or claim under which the Released Defendant Persons would be liable to pay any part of such Third Party Settlement, provided however that in no event shall the Liquidating Agents be required to decline a settlement they otherwise deem acceptable because such third party refuses to release the Released Defendant Persons.

(c)     Each of the Settling Parties acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Settling Parties acknowledge that inclusion of the provisions of this Section to this Agreement was a material and separately bargained for element of this Agreement.

9.     <u>Covenants by the JPM Defendants</u>.  Effective upon execution of this Agreement, the JPM Defendants, on behalf of themselves and all of the Releasing Defendant Persons, hereby covenant and agree that:

(a)     No Releasing Defendant Person shall commence, assert, file or initiate any Released Defendant Claim, including (but not limited to) by way of third-party claim, cross-claim or counterclaim or by right of representation or subrogation, against any of the Released Plaintiff Persons.

(b)     No Releasing Defendant Person shall participate in bringing or pursuing any Released Defendant Claim against any Released Plaintiff Person.

(c)     No Releasing Defendant Person shall interfere with the Liquidating Agents' prosecution of any claims the Liquidating Agents have asserted against any other entity on any claims relating to the Securities.

(d)     The Releasing Defendant Persons shall, without limiting their rights pursuant to Rule 45 of the Federal Rules of Civil Procedure and other applicable law, subject to all objections on the grounds of privilege, work product, relevance, and undue burden, and conditioned upon compliance with reasonable confidentiality provisions, use all reasonable efforts to comply with any subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure served upon them by any of the Released Plaintiff Persons relating to claims the Liquidating Agents have asserted against any other entity relating to the Securities.

10.     The obligations and benefits conferred in any confidentiality agreements entered into by the Settling Parties, governing confidentiality of information and documents shall remain in effect after the Effective Date, subject to the provisions of this Agreement.  The Exhibits to this Agreement shall remain confidential.

11.     <u>Representations and Warranties</u>.  Each Settling Party represents and warrants that:

(a)     it has the full legal authority, right, and capacity to enter into this Agreement on its behalf and to bind the Settling Party to perform its obligations hereunder, including any third-party authorization necessary to release the claims being released hereunder. This Agreement has been duly and validly executed and delivered by such Settling Party and, assuming due authorization, execution and delivery by the other Settling Party, constitutes a legal, valid and binding obligation of such Settling Party, enforceable against such Settling Party in accordance with its terms, subject to laws of general application relating to bankruptcy, insolvency and the relief of debtors and rules of law governing specific performance, injunctive relief or other equitable remedies;

(b)     the execution and delivery of this Agreement, the performance by such Settling Party of its obligations hereunder and the consummation of the transactions contemplated hereby, will not: (i) result in the violation by such Settling Party of any statute, law, rule, regulation or ordinance or any judgment, decree, order, writ, permit or license of any governmental or regulatory authority applicable to such Settling Party; or (ii) require such Settling Party to obtain any consent, approval or action of, make any filing with or give any notice to any person, which action has not already been undertaken and accomplished by such Settling Party;

(c)     notwithstanding anything else in this Agreement, and consistent with the definition of Releasing Persons, no Released Claim is hereby released against any Released Person (to the extent such Released Person otherwise has a Released Claim) where such Released Person does not itself release Released Claims as provided in Paragraphs 5 and 7 above;

(d)     it has not assigned, subrogated, pledged, loaned, hypothecated, conveyed, or otherwise transferred, voluntarily or involuntarily, to any other person or entity, the Released Claims, or any interest in or part or portion thereof, specifically including any rights arising out of the Released Claims; and

(e)     it has read and understands this Agreement and it has had the opportunity to consult with its attorneys before signing it.

12.     By signing this Agreement, each Settling Party, or its counsel as applicable, represents and warrants that it has full authority to enter into this Agreement and to bind itself, or its client, to this Agreement.

13.     <u>Right to Receive Benefits of the Securities</u>.

Other than as specifically set forth in this Agreement, nothing herein prohibits, restricts, or limits any Releasing Plaintiff Person from receiving any benefits deriving from, or exercising any rights appurtenant to, the Releasing Plaintiff Person's interests in the Securities in the ordinary course, including, without limitation, the right to receive or assign payments from the Securities or to sell or otherwise dispose of their interests in the Securities.

14.     This Agreement constitutes the entire agreement among the Settling Parties and overrides and replaces all prior negotiations and terms proposed or discussed, whether in writing or orally, about the subject matter hereof.  No modification of this Agreement shall be valid unless it is in writing, identified as an amendment to the Agreement and signed by all Settling Parties hereto.

15.     Each of the Settling Parties submits to the personal jurisdiction of the United States District Court for the District of Columbia for purposes of implementing and enforcing the settlement embodied in this Agreement.  The Settling Parties otherwise expressly reserve their jurisdictional rights to any action, suit or proceeding commenced outside the terms of this Agreement.

16.     Each of the Settling Parties hereto agrees to execute and deliver, or to cause to be executed and delivered, all such instruments, and to take all such action as the other Settling Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.

17.     This Agreement is governed by and shall be construed in accordance with the laws of the State of New York without regard to conflicts of law principles.

18.     Except as otherwise expressly set forth herein, each Settling Party shall bear its own costs and expenses, including any and all legal and expert fees, incurred in connection with this Agreement and the Actions.

19.     Notices required by this Agreement shall be communicated by email and any form of overnight mail or in person to:

(a)     If to the Liquidating Agents:

Michael J. McKenna and
John K. Ianno
Office of the General Counsel
National Credit Union Administration
1775 Duke Street
Alexandria, VA  22314
mmckenna@ncua.gov

johni@ncua.gov

David C. Frederick
Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.
1615 M Street NW, Suite 400
Washington, D.C. 20036
dfrederick@khhte.com

(b) If to the JPM Defendants:

Alla Lerner
JPMorgan Chase & Co.
One Chase Manhattan Plaza
New York, New York  10081
alla.lerner@jpmorgan.com

Sharon L. Nelles
Sullivan & Cromwell LLP
125 Broad Street
New York, New York  10004
nelless@sullcrom.com

20.     This Agreement is the result of arm's-length negotiation between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Agreement.  No provision of this Agreement shall be interpreted or construed against any Settling Party because that Settling Party or its legal representative drafted that particular provision.  Any captions and headings contained in this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

21.     Upon execution by the Settling Parties, this Agreement is binding upon and shall inure to the benefit of the Settling Parties, their successors, assigns, heirs, executors, legal representatives and administrators.

22.     <u>Non-Waiver.</u>

(a)     Any failure by any Settling Party to insist upon the strict performance by any other Settling Party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Agreement to be performed by such other Settling Party.

(b)     No waiver, express or implied, by any Settling Party of any breach or default in the performance by the other Settling Party of its obligations under this Agreement shall be deemed or construed to be a waiver of any other breach, whether prior, subsequent or contemporaneous, under this Agreement.

23.     This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures exchanged by facsimile or .pdf shall be valid and effective as original signatures.

24.     All of the exhibits attached to this Agreement are material and integral parts hereof and are hereby incorporated by reference as if fully set forth herein.

25.     The Settling Parties and their respective counsel agree to cooperate fully with one another in order to effect the consummation of the settlement of the Actions.

26.     Nothing in this Agreement shall be used as an admission or concession that JPMorgan Chase Bank, N.A., or any other Defendant, contractually assumed or is otherwise liable for any alleged liabilities or wrongdoing of Washington Mutual Bank ("WMB"), or otherwise waived any alleged contractual right unless expressly released herein or expressly released in any related agreement.


**IN WITNESS WHEREOF**, the Settling Parties execute this Agreement as of the date first above referenced with the intent to be bound by its terms and conditions.

U.S. CENTRAL FEDERAL CREDIT UNION, BY ITS LIQUIDATING AGENT THE NCUA
BOARD

BY: _____
NAME: MIKE BARTON
TITLE: AUTHORIZED REPRESENTATIVE


WESTERN CORPORATE FEDERAL CREDIT UNION, BY ITS LIQUIDATING AGENT
THE NCUA BOARD

BY: _____
NAME: MIKE BARTON
TITLE: AUTHORIZED REPRESENTATIVE


SOUTHWEST CORPORATE FEDERAL CREDIT UNION, BY ITS LIQUIDATING AGENT
THE NCUA BOARD

BY: _____
NAME: MIKE BARTON
TITLE: AUTHORIZED REPRESENTATIVE


MEMBERS UNITED CORPORATE FEDERAL CREDIT UNION, BY ITS LIQUIDATING
AGENT THE NCUA BOARD

BY: _____
NAME: MIKE BARTON
TITLE: AUTHORIZED REPRESENTATIVE


CONSTITUTION CORPORATE FEDERAL CREDIT UNION, BY ITS LIQUIDATING
AGENT THE NCUA BOARD

BY: _____
NAME: MIKE BARTON
TITLE: AUTHORIZED REPRESENTATIVE

JPMORGAN CHASE BANK N.A.
J.P. MORGAN ACCEPTANCE CORPORATION I
J.P. MORGAN SECURITIES LLC
BOND SECURITIZATION LLC
BEAR STEARNS & CO., INC.
BEAR STEARNS ASSET BACKED SECURITIES I LLC
STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.

By: _____
Stephen M. Cutler
General Counsel
JPMorgan Chase & Co.

Dated: _Nov 19, 2013_____

WAMU ASSET ACCEPTANCE CORPORATION

By:_____
Anthony J. Horan
Vice President and Assistant Secretary

Dated: _____

WAMU CAPITAL CORPORATION

By:_____
Anthony J. Horan
Vice President and Assistant Secretary

Dated: _____

LONG BEACH SECURITIES CORPORATION

By:_____
Anthony J. Horan
Vice President and Assistant Secretary

Dated: _____

**JPMORGAN CHASE BANK N.A.**
**J.P. MORGAN ACCEPTANCE CORPORATION I**
**J.P. MORGAN SECURITIES LLC**
**BOND SECURITIZATION LLC**
**BEAR STEARNS & CO., INC.**
**BEAR STEARNS ASSET BACKED SECURITIES I LLC**
**STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.**

By:_____
Stephen M. Cutler
General Counsel
JPMorgan Chase & Co.

Dated: _____

**WAMU ASSET ACCEPTANCE CORPORATION**

By:_____
Anthony J. Horan
Vice President and Assistant Secretary

Dated: _19 November 2013_

**WAMU CAPITAL CORPORATION**

By:_____
Anthony J. Horan
Vice President and Assistant Secretary

Dated: _19 November 2013_

**LONG BEACH SECURITIES CORPORATION**

By:_____
Anthony J. Horan
Vice President and Assistant Secretary

Dated: _19 November 2013_