UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BETTER MARKETS, INC.,<br><br>                     Plaintiff,<br><br>                         v.<br><br>UNITED STATES<br>DEPARTMENT OF JUSTICE, *et al.*,<br><br>                     Defendants. | Civil Action No. 14-190 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

The plaintiff, Better Markets, Inc., an advocacy organization dedicated to promoting "the public interest in the financial markets," Compl. ¶ 29, ECF No. 11, filed this complaint to challenge entry by the defendants, the United States Department of Justice and the Attorney General, into a multi-billion dollar settlement agreement with JPMorgan Chase & Co. ("Chase") for alleged wrongdoing stemming from the financial crisis of 2008. *See generally* Compl. Pending before the Court is the defendants' Motion to Dismiss on grounds of lack of subject matter jurisdiction or, alternatively, for failure to join an indispensable party, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7), respectively. Defs.' Mot. Dismiss at 1, ECF No. 12. Since the plaintiff lacks standing to pursue this action, the defendant's motion is GRANTED.

## I.  BACKGROUND

Although the plaintiff provides a lengthy description of the events leading up to the settlement between the defendants and Chase, *see* Compl. ¶¶ 46–102, the vast majority of that information is immaterial to the resolution of the pending motion. Thus, only those facts

1

necessary to resolve the pending motion to dismiss due to the plaintiff's lack of standing are discussed below.

The plaintiff avers that it is a "501(c)(3) tax-exempt nonprofit organization" that was "founded in 2010 to promote the public interest in the financial markets." Compl. ¶ 29. The plaintiff "advocates for greater transparency, accountability, and oversight in the financial system through a variety of activities," including commenting on proposed regulations, "public advocacy," and litigation. *Id.*

In 2013, the defendants, as well as the FDIC, "the Federal Housing Finance Agency, the National Credit Union Administration, and the attorneys general of California, Delaware, Illinois, Massachusetts, and New York," entered into a "global settlement" agreement with Chase in the amount of "$13 billion, including $4 billion in consumer relief." Defs.' Mem. Supp. Defs.' Mot. Dismiss ("Defs.' Mem.") at 1, ECF No. 12; *see* Compl. ¶ 48 (summarizing terms of settlement). The settlement agreement sought to resolve "a defined set of claims," including those raised in nineteen lawsuits filed by the parties to the settlement. Defs.' Mem. at 1. As a result of the settlement, those lawsuits "have since been dismissed with prejudice." *Id.*

Out of the $13 billion settlement, "$2 billion was paid to the U.S. Department of Justice as a civil monetary penalty under" the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Defs.' Mem. at 8 (citing Defs.' Mem. Ex. 1 (Settlement Agreement) ¶ 1(A)(i), ECF No. 12-1). Another $4 billion was committed to consumer relief through rate reductions and loan forgiveness for qualifying mortgage holders. *See* Defs.' Mem. Annex 2 at 2–4, ECF No. 12-3. The balance was distributed to the National Credit Union Association, the FDIC, the states of New York, California, Delaware, and Illinois, and the Commonwealth of

Massachusetts, to resolve potential claims by those entities against Chase. Defs.' Mem. at 8. The plaintiff was not a party to the agreement. *See generally* Compl.

The plaintiff filed the instant suit alleging that the defendants' decision to enter into the settlement agreement instead of filing a lawsuit against Chase violated the Constitution's Separation of Powers Clause, the Administrative Procedure Act ("APA"), and the FIRREA. *See generally id.* The defendants moved to dismiss the Complaint for lack of subject matter jurisdiction because the plaintiffs, *inter alia*, lack standing to challenge the defendants' actions, and the plaintiff failed to join indispensable parties, including several States. Defs.' Mem. at 3–4, ECF No. 12.

## II. LEGAL STANDARD

### A. Dismissal Under Federal Rule Of Civil Procedure 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); FED. R. CIV. P. 12(h)(3). When considering a motion to dismiss under Rule 12(b)(1), the Court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the

facts alleged and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations and internal quotation marks omitted).

### B. Standing

Article III of the Constitution restricts the power of federal courts to hear only "Cases" and "Controversies." CONST. Art. III, § 2 cl. 1. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (alterations in original). Absent standing by the plaintiffs, the Court lacks subject matter jurisdiction to hear the claim and dismissal is mandatory. *See* FED. R. CIV. P. 12(h)(3). The Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. First, the plaintiff must have suffered an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of," i.e., the injury alleged must be "fairly trace[able] to the challenged action of the defendant." *Id.* (alteration in original; citation omitted). Finally, it must be "likely" that the injury will be "redressed by a favorable decision." *Id.* at 561.

### III. DISCUSSION

The defendants assert that the plaintiff has failed to show it has suffered "a cognizable harm, or that the relief it seeks will redress its alleged injuries." Defs.' Mem. at 11. As a result, the defendants argue that the plaintiff lacks standing and this Court lacks jurisdiction over the instant matter. The defendants are correct.

### A.     The Plaintiff Lacks Standing

Significantly, for purposes of evaluating the plaintiff's standing, the plaintiff is not bringing suit as a representative of others, but rather by itself as a stand-alone entity.  Compl. ¶ 29 (identifying sole plaintiff as "501(c)(3) tax exempt nonprofit organization").  Thus, the plaintiff must meet the same standing requirements as an individual and cannot rely upon "representational standing."  See *Nat'l Ass'n of Homebuilders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) ("To establish organizational standing, [an organization] must 'allege[] such a 'personal stake' in the outcome of the controversy as to warrant the invocation of federal-court jurisdiction." (quoting *Nat'l Taxpayers Union, Inc. v. United States* (*National Taxpayers*), 68 F.3d 1428, 1433 (D.C. Cir. 1995) (second alteration in original)).

Cases in this Circuit have been clear that in order to demonstrate organizational standing, an organization must show "that it has a suffered injury in fact, including [s]uch concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests."  *Id.* (quoting *National Taxpayers*, 68 F.3d at 1433) (alterations in original).  The plaintiff falls far short of meeting this high bar for organizational standing.

In its Complaint, the plaintiff alleges four grounds for standing: (1) the defendants' actions "undermin[e] its mission objectives;" (2) the defendants "interfere[e] with its ability to pursue its advocacy activities . . . by forcing it to devote resources to counteracting the harmful effects of the DOJ's unlawful settlement process;" (3) the defendants are "depriving [the plaintiff] of the information to which it would have been entitled had the DOJ sought judicial review and approval of the [settlement];" and (4) the defendants are "depriving [the plaintiff] of

5

a judicial forum in which it could seek to participate to influence the settlement process before the agreement becomes effective." Compl. ¶ 43.

The first two grounds—that the defendants are "undermining [the plaintiff's] mission objectives" and that they are "forcing [the plaintiff] to devote resources to counteracting the harmful effects of the DOJ's unlawful settlement process," *id.*—are foreclosed by clear D.C. Circuit precedent.  The plaintiff's claim that its "mission objectives" are undermined is exactly the sort of "abstract concern" rejected as a ground for organizational standing in *National Taxpayers*.  In that case, the D.C. Circuit found that an advocacy organization's "allegation that [a statutory provision] has frustrated [the organization's] objectives is the type of abstract concern that does not impart standing."  68 F.3d at 1433 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39–40 (1976)); *see also Ctr. for Law & Educ. v. U.S. Dep't of Educ.*, 396 F.3d 1152, 1161–1162 (D.C. Cir. 2005) (affirming order dismissing organizations' claim for lack of standing and subject matter jurisdiction when alleged harm from challenged Federal rules was that organizations were "force[d] . . . to change their lobbying strategies, a more costly form of lobbying" since "'[c]onflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing.  Frustration of an organization's objectives is the type of abstract concern  that does not impart standing.'" (quoting *Nat'l Treas. Emps. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996)).  .

The plaintiff's second ground for standing, the expenditure of resources, fares no better. In order for such an expenditure to rise to the level of a concrete injury for standing purposes, an organization "must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." *National Taxpayers*, 68 F.3d at 1433 (internal quotation

marks omitted).  The plaintiff has utterly failed to point to a single programmatic concern impacted by the defendants' actions and, consequently, this ground for standing fails.[1]

The plaintiff's third and fourth grounds for standing—deprivation of information and a judicial forum—are also insufficient.  In certain circumstances, "'a denial of access to information can work an injury in fact for standing purposes, at least where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them." *ASPCA v. Feld Entm't, Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011) (quoting *Ethyl Corp. v. EPA*, 306 F.3d 1144, 1148 (D.C. Cir. 2002)).  In this matter, however, the plaintiff has pointed to no statute entitling the plaintiff to the information it seeks.  Rather, the plaintiff alleges in a conclusory fashion that "because the [defendants] circumvented the judicial process" by settling with Chase instead of filing a lawsuit, the plaintiff "was deprived of other information that it requires to advocate for effective enforcement of the law." Compl. ¶ 103(b)(ii).

The plaintiff's claim to a right to information as a result of a potential lawsuit, however, is attenuated at best.  Even if a judicial proceeding had occurred, not all evidence submitted is guaranteed to be publicly available.  *See* LCvR 5.1(h) (setting forth mechanisms for filing documents under seal).  It is also not guaranteed that the plaintiff would have been granted leave to participate as an amicus.  *See Jin v. Minister of State Security*, 557 F. Supp. 2d 131, 136–37 (D.D.C. 2008) ("District Courts have inherent authority to appoint or deny amici . . . . [i]t is solely within the court's discretion to determine 'the fact, extent, and manner' of participation.").

---

[1] The defendants note that "since the settlement agreement was signed on November 19, 2013, Plaintiff has written three blog entries, three press releases, and conducted a single interview regarding the settlement – almost half of which simply advertise this lawsuit." Defs.' Mem. at 14.  Considering that the plaintiff has come forward with no evidence of obstacles put into place by the settlement agreement preventing the plaintiff from carrying out its objectives, the defendants' observation is probative of the ultimate purpose of this lawsuit.

Thus, the plaintiff's claimed harm from an inability to obtain information in a judicial proceeding, because the need for such a proceeding was obviated by the global settlement, is entirely speculative and, therefore, insufficient to amount to the concrete injury required to confer standing.  *See Lujan*, 504 U.S. at 560.

Essentially, the plaintiff is challenging the DOJ's decision about how to exercise its federal law enforcement powers.  *See generally* Compl.  The plaintiff reasons that it had a right to enforcement of the laws in a particular manner different from the defendants' choice with respect to Chase, and that due to the defendants' choice of enforcement action, the plaintiff was deprived of information to which it was entitled, as well as the right to participate as an amicus.  Compl. ¶¶ 103.  This reasoning is seriously flawed.  Choosing whether and how to enforce a statute is the quintessential type of action "committed to an agency's absolute discretion."  *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1031 (D.C. Cir. 2007) (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)).  Such decisions are "presumptively unreviewable."[2]  *Id.*  Indeed, the defendants could have declined to pursue any enforcement action against Chase, and such a decision would have been wholly unreviewable.  *See Heckler*, 470 U.S. at 831.  Thus, the plaintiff's claim that it was entitled to an enforcement action that triggered a judicial proceeding from which it could obtain information and participate as an amicus lacks any basis in law.

The plaintiff cites the text of the FIRREA, which states that "[a] civil action to recover a civil penalty under this section shall be commenced by the Attorney General," 12 U.S.C. § 1833a(e), to argue that the settlement with Chase is *ultra vires* because it "extracted monetary sanctions from JP Morgan Chase without being authorized by law to do so," Compl. ¶ 25(e); *see* Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 9–14, ECF No. 14.  The defendants' failure

---

[2] It is far from obvious that the plaintiff is challenging a final agency action, as required by the APA, but since the plaintiff lacks standing to pursue any of its claims, the Court does not opine on this issue.

to follow the procedural requirements of the FIRREA by filing a civil action, according to the plaintiff, confers standing because the plaintiff has been harmed by the concomitant loss of information generally available in judicial proceedings.  *See* Compl. ¶ 103(b)(ii).

The plaintiff is incorrect.  The FIRREA does not provide the type of statutory right to information that has been found to provide informational standing.  Where courts have found informational standing, they have done so because the plaintiff has possessed a statutory right to information that was obvious and explicit.  *See FEC v. Akins*, 524 U.S. 11, 19–20 (1998) (finding informational standing where statute required public disclosure of political expenditures); *Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449–50 (1989) (finding informational standing where statute required public notice of meetings, open meetings, and publication of charter documents); *ASPCA*, 659 F.3d at 22–23 (noting provision of Endangered Species Act which requires public disclosure of permitting information could potentially provide informational standing).  A requirement that the Attorney General institute a civil lawsuit to impose a civil penalty is not the type of statutory requirement for public disclosure of information found sufficient to grant standing in *Akins*, *Public Citizen*, or *ASPCA*.

Even if the plaintiff's reading of the law is correct, the plaintiff has not shown how the defendants' alleged violation of FIRREA has any adverse impact on the plaintiff itself.  The *plaintiff* has not demonstrated that *it* has a right to a judicial proceeding between the defendants and Chase; indeed, it cannot, since a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  This is because courts should "ensure that the most effective advocate of the rights at issue is present to champion them." *LaRoque v. Holder*, 650

F.3d 777, 782 (D.C. Cir. 2011) (quoting *Duke Power Co. v. Carolina Evnt'l Study Grp., Inc.*, 438 U.S. 59, 80 (1978)) (internal quotation marks omitted).

The D.C. Circuit recently explained that plaintiffs attempting to establish so-called procedural standing "must establish the agency action [taken] threatens their concrete interest." *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). Assuming a plaintiff can establish such a potential harm, "normal standards for immediacy and redressability are relaxed," but "[i]t is not enough to assert 'a mere general interest in the alleged procedural violation common to all members of the public.'" *Id.* (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996)). In the instant matter, the plaintiff cannot pass the "threshold" of a concrete interest. By definition, any information the plaintiff would be able to obtain from a public judicial proceeding is "common to all members of the public," *id.*, since any member of the public would be able to view the documents submitted to the court and seek leave to file an amicus brief. Thus, assuming, *arguendo*, that the defendants were required by the FIRREA to bring a civil action against Chase to exact any penalties under the FIRREA, the plaintiff still would lack standing to pursue the instant matter, since the plaintiff has demonstrated no injury that is unique to the plaintiff.

The plaintiff has failed to meet its burden to show it has suffered an injury in fact, and consequently it cannot demonstrate standing. Thus, this Court lacks subject matter jurisdiction over this matter.[3]

---

[3] Given the outcome of this matter, it is unnecessary for the Court to reach the defendants' alternative grounds for dismissal based on failure to join indispensable parties. Nevertheless, it is worth noting that the plaintiff is attempting to unwind a settlement agreement that distributed billions of dollars to consumers, several government agencies, and four States. Thus, if the plaintiff had standing to pursue the instant matter, which it does not, the matter would still be subject to dismissal since the States and other government agencies that are parties to the settlement agreement are likely indispensable parties pursuant to Federal Rule of Civil Procedure 19 because the parties are those in whose "absence[] the court cannot accord complete relief," FED. R. CIV. P. 19(a)(1)(A), and because those entities would likely "claim[] an interest relating to the subject of the action," and are "so situated that

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss is GRANTED.

An Order consistent with this Memorandum Opinion will issue contemporaneously.

Date: March 18, 2015

_____
BERYL A. HOWELL
United States District Judge

---

disposing of the action in the[ir] . . . absence may, as a practical matter impair or impeded the[ir] . . . ability to protect the interest," *id.* 19(a)(1)(B).